IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DANIEL WILLIAM JAMISON,

      Plaintiff,

    v.                                   Civil Action No.  3:22cv425

HAROLD W. CLARK, *et al.*,

      Defendants.

## MEMORANDUM OPINION

Daniel William Jamison, Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983

action.[1]  The matter is before the Court on Jamison's intentional disregard of the Court's orders

and abusive litigation practices.  As explained below, the Court has gone to considerable

lengths to shape Jamison's pleadings to make them fit for litigation and so that they were not

abusive or repetitive.  Nevertheless, Jamison's disregarded the Court's orders, provided

knowingly false information, and realleged claims against defendants that previously had been

dismissed with prejudice by the United States District Court for the Western District of Virginia

("Western District").  For the reasons set forth below, the action will be DISMISSED

WITHOUT PREJUDICE.

### I.  Procedural and Factual Background

**A.**    **Summary from the November 13, 2023 Memorandum Orders**

The Court summarized the relevant procedural and factual history in its Memorandum

Order entered on November 13, 2023.

---

[1]  The Court employs the pagination assigned by the CM/ECF docketing system to the
parties' submissions.  The Court corrects the spelling, punctuation, and capitalization and omits
the emphasis in quotations from the parties' submissions.  The Court omits any secondary
citations in the quotations from the parties' submissions.

Plaintiff's initial complaint in this matter was over 200 pages in length. The Court notes that Plaintiff has considerable prior litigation history in this Court. By Memorandum Order entered on September 1, 2023, the Court directed Plaintiff to file a particularized complaint. (ECF No. 11.) Furthermore, the Court was aware that Plaintiff had litigated a variety of issues related to his medical conditions, his celiac disease, in this Court and in the United States District Court for the Western District of Virginia. *See Jamison v. Amonette*, No. 7:18-CV-00504, 2022 WL 326095, at *1 (W.D. Va. Feb. 3, 2022) *Jamison v. Kincaid*, No. 1:21-cv-1062 (RDA/IDD), 2022 WL 981938, at *1 (E.D. Va. Mar. 30, 2022), *aff'd sub nom. Phoenix v. Kincaid*, No. 22-6438, 2023 WL 5745363 (4th Cir. Sept. 6, 2023); *see also Jamison v. Kincaid*, No. 3:19CV19, 2021 WL 4199997, at *16–17 (E.D. Va. Sept. 15, 2021). Accordingly, the Court also directed Plaintiff to:

> certify that he has not litigated any of the claims in the present action in any other litigation. Plaintiff must provide a list of all of his prior federal litigation for the last six years. The list must contain the case name, case number, the court where the case was filed, the claims raised, the defendants for each claim, and the disposition of each claim.

(ECF No. 11, at 2.) The Court further warned Plaintiff that, "**FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN THE DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b)." (*Id.*)

Jamison submitted his First Particularized Complaint, but as the Court noted in the Memorandum Order entered on March 6, 2023:

> The First Particularized Complaint is 200 pages in length and names 35 defendants. Jamison failed to follow the Court's directive to "provide a concise, numbered list of his claims that includes, the names of the of the defendants and his explanation as to why the defendants are liable." (ECF No. 11, at 2.) Instead, his claims sprawl over scores and scores of pages.[2]
>
> Jamison also ignored the Court's directive to ensure that all of his claims are properly joined. The central theme to the First Particularized Complaint is that many of the Defendants acted with indifference to Jamison's celiac disease. However, Jamison also

---

[2] On January 13, 2023, Jamison submitted a twenty-page "Bill of Particulars, Supplemental Brief," wherein he states additional allegations and provides a clearer listing of his claims. However, it is not clear whether this list contains all of Jamison's claims or simply supplements any claims that are lurking in the First Particularized Complaint. In any event, neither the Court nor opposing counsel should be required to flip through various documents filed by Jamison to assemble his complaint. *See Williams v. Wilkerson*, 90 F.R.D. 168, 169–70 (E.D. Va. 1981)

complains, *inter alia*, that Dr. Hensroth acted with deliberate indifference to Jamison's neck, back, arm, and shoulder problems (ECF No. 17, at 100–101); Harold Clarke, David Robinson, Natarcha Gregg, Tammy Williams, J.D. Oates, Harris and Blair violated his First Amendment rights by limiting the amount of loans for legal mail and for copying (*id.* at 148–51); Natarcha Gregg violated his Fourteenth Amendment rights by changing his medical diet order and providing a false affidavit in a case Jamison had filed in the United States District Court for the Western District of Virginia (*id.* at 168–71); Mrs. Edwards and Mrs. Reid violated his rights under the Fourteenth Amendment by mishandling his legal mail (*id.* at 178); and, apparently almost all of the Defendants engaged in a civil conspiracy against Jamison (*id.* at 185–198). These claims are not all properly joined together and may not be litigated in a single action.

. . . .

The Particularized Complaint is convoluted and disorganized. Jamison improperly joined claims and Defendants, and the listed claims are often redundant. For example, Jamison often repeats his Eighth Amendment claims regarding the denial of adequate medical care as a Fourteenth Amendment claim for the denial of adequate medical care. However, "it is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater substantive protection 'than does the Cruel and Unusual Punishments Clause.'" *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Additionally, it appears that some of Jamison's present claims are repetitive of claims adjudicated, or at least raised, in other litigation. However, this is difficult to determine as Jamison failed to comply with the Court's directive to "certify that he has not litigated any of the claims in the present action in any other litigation." (ECF No. 11, at 2.) Further, although Jamison provided a **list** of all of his prior federal litigation for the last six years, he failed to list "the claims raised, the defendants for each claim, and the disposition of each claim." (*Id.*) Instead, he only provided a vague description of the prior case and the course of the litigation and an incomplete list of the defendants and claims. (ECF No. 17–1.)

(ECF No. 25, at 3–5.)

Accordingly, the Court directed Plaintiff to submit a Second Particularized Complaint that complied with the Court's directions. (*Id.* at 5–6.) In submitting the Second Particularized Complaint, the Court required Plaintiff to "certify that

none of the claims, or **portions of claims**, in the Second Particularized Complaint have been raised and dismissed with prejudice by any other court." (*Id.* at 6 (emphasis added).) Additionally, the Court required Plaintiff to submit a document titled, "PRIOR LITIGATION," wherein Jamison was required "to provide a list of all of his prior federal litigation for last seven years. The list must contain the case name, case number, the court where the case was filed, a list of the claims raised, the defendants for each claim, and the disposition of each claim." (*Id.*)

On April 10, 2023, Plaintiff filed his Second Particularized Complaint (ECF No. 30) along with his certified statement that "no claim raised in this action has been dismissed with prejudice as part of prior litigation." (ECF No. 29, at 1.) The Court relied on Plaintiff's certified statement. In a Memorandum Order entered on May 1, 2023, the Court ordered service of the Second Particularized Complaint.

Thereafter, on June 26, 2023, Plaintiff filed a Motion to Consolidate wherein he requested that the Court consolidate the present action with the host of other actions he currently has pending regarding his ailments and the alleged indifference by prison officials. (ECF No. 46.)

On June 30, 2023, Defendant Ohai filed a Motion to Drop the Claims Against Him, or in the Alternative, Sever Those Claims and Transfer Venue. (ECF No. 52.) Additionally, Defendant Ohai filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. (ECF No. 54.) In support of these motions, Defendant Ohai asserts:

> Jamison, a pro se prisoner of the Virginia Department of Corrections ("VDOC"), asserts Eighth Amendment claims of deliberate indifference to a serious medical against Dr. Ohai related to the diagnosis and treatment of Jamison's celiac disease while he was housed at Dillwyn Correctional Center ("Dillwyn") between May 15, 2018, and August 3, 2019. (Sec. Part. Compl., Doc. 30 p. 19, 24, 35). Dillwyn is located in Buckingham County, which lies within the Lynchburg Division of the Western District of Virginia. W.D. Va. Gen. R. 2. While Jamison has claims against other defendants arising out of his incarceration at Deerfield Correctional Center, the claims against Dr. Ohai arose solely at Dillwyn.
>
> Notably, Jamison previously filed these claims against Dr. Ohai in the Western District of Virginia, and Dr. Ohai was granted summary judgment on the merits in that case. *Jamison v. Amonette*, Civil Action No. 7:18-cv-00504, 2022 U.S. Dist. LEXIS 19721, at *32 (W.D. Va. Feb. 3, 2022), appeal pending. Pursuant to Fed. R. Civ. R. 21, Dr. Ohai requests that this court drop him and the claims against him, or in the alternative, sever and transfer the claims against him to the Lynchburg Division of the Western District of Virginia.
>
> . . . .

4

> Moreover, and of no small significance, Dr. Ohai has already successfully defended himself on the very same claims in the Western District of Virginia, which reviewed the evidence and is familiar with the issues. To the extent Jamison's claims against Dr. Ohai are not precluded by res judicata, Dr. Ohai should be permitted to defend the case in the same court that heard the prior case. He should not be subjected to successive or duplicative suits in multiple courts and jurisdictions concerning the same issues simply because Jamison did not like the first result and hopes to get a different result in a different forum.

(ECF No. 53, at 1–2, 5.)

(ECF No. 82, at 1–4 (footnote number altered).)

At the time the November 13, 2023 Memorandum Order was entered, Defendants Clarke, Amonette, Gregg, Williams, Oates, Blair, Mrs. Harris, Imporata, Ingram-Harris, Hudson, Billups, Mrs. Cosby, and Mrs. Oseghale ("VDOC Defendants), had yet to respond to the Second Particularized Complaint. Accordingly, the Court directed:

> Prior to responding to the substance of the Second Particularized Complaint, the VDOC Defendants shall review the Second Particularized Complaint, and within twenty (20) days of the date of entry hereof, brief the Court as to whether any claims, or portions of claims, have previously been dismissed with prejudice by any court. The VDOC Defendants shall state with particularity where the claim or portion of claim was raised and dismissed with prejudice.

(ECF No. 82, at 4–5.) The Court further warned Jamison:

> Plaintiff is advised that the Court is contemplating dismissing the action in whole, or in part, should it appear that he has falsely certified that no claim, or a portion of a claim, in the Second Particularized was dismissed with prejudice or if he otherwise disregarded the Court's directions regarding not attempting to relitigate claims previously dismissed. Within thirty (30) days of the date of entry, Plaintiff may file his opposition to the VDOC's forthcoming brief and to the imposition of any sanction.

(ECF No. 82, at 5.)

The Court issued a second Memorandum Order on November 13, 2023. (ECF No. 81.) In that Memorandum Order, the Court addressed a host of motions filed by the parties, including

Jamison's Motion to Consolidate, wherein he sought to consolidate the action with numerous other actions he had filed. (ECF No. 81, at 2, 4.) The Court denied the Motion to Consolidate because "consolidating this case with Plaintiff's additional cases would only result in prejudice, expense, and delay the resolution of any claim." (ECF No. 81, at 4.)

**B.    The VDOC Defendants' Response to the November 13, 2023 Memorandum Order**

The VDOC Defendants asserted that Jamison's claims or portions of claims pertaining to the denial of adequate medical treatment in the Second Particularized Complaint with respect to Defendants Clarke, Oates, Gregg, and Amonette were repetitive of claims dismissed with prejudice by the Western District. (ECF No. 83, at 2 (citing *Jamison v. Amonette*, No. 7:18-CV-00504, 2022 WL 326095 (W.D. Va. Feb. 3, 2022); *Jamison v. Clarke*, No. 7:18-CV-00504, 2020 WL 5778791, at *11 (W.D. Va. Sept. 28, 2020)). The VDOC Defendants further argued that the Court should dismiss the action under Federal Rule of Civil Procedure 41(b) based on Jamison's failure to comply with the orders of this Court. (ECF Nos. 84, 87.)

**C.    Jamison's Lack of Response to the November 13, 2023 Memorandum Order**

Jamison's response to November 13, 2023 Memorandum Order originally was due on December 13, 2023. Jamison failed to respond by that date. Instead, Jamison waited until December 27, 2023 to move for an extension of time. (ECF No. 85.) By Memorandum Order entered on January 2, 2024, the Court granted Jamison and extension of time, but directed that his response must be filed within eleven (11) days of the date of entry thereof. (ECF No. 86.)

Jamison did not file his response within that time period. Instead, on January 12, 2023, Jamison moved for another extension of time.[3] (ECF No. 90.) Jamison explains that he was

---

[3] Jamison also filed a Motion to Drop Defendant Ohai. (ECF No. 91.)

transferred to a new prison on January 9, 2024, and it may be twenty (20) days before he receives his legal paperwork. (ECF No. 90, at 1.) Jamison further states that, once he receives his legal property, he will need an additional two weeks to complete his response to the November 13, 2023 Memorandum Order. (ECF No. 90, at 1.) Thus, Jamison's response indicates that he never intended to complete his response within the time period provided by the Court. Given these circumstances, the Court declines to find that Jamison has demonstrated good cause in support of a further extension of time. Accordingly, the Motion for a Second Enlargement of Time (ECF No. 90) will be DENIED.

## II.  Jamison's Current Repetitive Claims

The Western District provided the following summary of Jamison's allegations:

> In general terms, Jamison claims that he has been diagnosed with celiac disease, which he describes as a "pre-[cancerous] digestive disorder" (Compl. 9, Dkt. No. 1) and that he also has an allergy to chicken, in addition to a number of other medical issues. The established treatment for celiac disease is a gluten-free diet. Jamison alleges that, during his time at both Nottoway and Dillwyn, defendants failed to treat him for his celiac disease by either refusing to order that he be given a gluten-free diet or for interfering with his receiving such a diet once it was ordered. He alleges that, as a result, he repeatedly was faced with the prospect of either going hungry or eating food that would make him very ill. ... His complaint also challenges generally the medical care he received at Dillwyn.

*Jamison v. Clarke*, ("the Western District Case") No. 7:18-CV-00504, 2020 WL 5778791, at *2 (W.D. Va. Sept. 28, 2020) (alteration in original).

### A.    Repetitive Claims Against Dr. Ohai

In his Second Particularized Complaint, Jamison challenges his allegedly inadequate medical care for his celiac disease from March 3, 2018 until August 3, 2019, while he was

7

confined in Dillwyn Correctional Center ("Dillwyn"). (ECF No. 30, at 1–4.)[4]  Jamison insists

that "[t]he only treatment for diagnosed celiac disease by any medically licensed practitioner . . .

is a gluten free diet." (ECF No. 30, ¶ 3.)  Nevertheless, Jamison insists that he suffered because

Dr. Ohai refused to provide him proper medical care while he was confined at Dillwyn.  (ECF

No. 30, at 1–3.)  In his Western District Case, Jamison raised this identical claim.  *See Jamison*

*v. Clarke*, No. 7:18-CV-00504, 2021 WL 969201, at *4–12 (W.D. Va. Mar. 15, 2021) (denying

Dr. Ohai's initial motion for summary judgment).  The Western District ultimately dismissed this

identical claim with prejudice and stated:

> Dr. Ohai's motion seeks summary judgment first on the grounds that Jamison has no expert on the standard of care.  Dr. Ohai also contends that exclusion of Dr. Choi means that Jamison has no expert on his "condition"—*i.e.*, to describe celiac disease—or on causation.  According to Dr. Ohai, the absence of admissible expert testimony on one or both of these subjects entitles him to summary judgment.  This is because expert testimony is required on the issues of "[w]hether Jamison actually has celiac disease, whether he sustained an injury or exacerbation of his condition, or whether such injury or exacerbation was caused by Dr. Ohai's treatment (as opposed to Jamison's noncompliance or the natural progression of his disease.)" (ECF No. 207 at 6.)  As already noted, the court has excluded Dr. Choi and Jamison's treating physicians as expert witnesses.  Accordingly, Jamison has not pointed to *any* admissible expert testimony that could support his assertion that Dr. Ohai deviated from the standard of care in treating Jamison's symptoms, or that Dr. Ohai's treatment decisions caused him any damage.
>
> The court concludes that the absence of any expert to testify on the threshold standard of care or on the presence of an injury caused by Dr. Ohai is fatal to Jamison's Eighth Amendment claim.

*Jamison v. Amonette*, No. 7:18-CV-00504, 2022 WL 326095, at *11–12 (W.D. Va. Feb. 3, 2022)

(alteration in original) (citation omitted).  Jamison's current claim against Dr. Ohai is almost

entirely redundant of the claim previously dismissed by the Western District.

---

[4] On August 3, 2019, Jamison was transferred to Deerfield Correctional Center.  (ECF No. 30, ¶ 13.)

**B.**  **Repetitive Claims Against Defendants Clarke, Amonette, Gregg, and Oates**

In his Second Particularized Complaint, Jamison notes that in 2018, he sent letters to Defendants Clarke, Amonette, and Gregg informing them that he was not receiving proper medical care for his celiac disease which required a gluten free diet. (ECF No. 30, ¶ 10.) Jamison contends these Defendants ignored his letters and suffering. (ECF No. 30, ¶ 10.) In asserting that these Defendants acted with deliberate indifference, Jamison specifically relies, in part, on times that he was confined in Dillwyn. (ECF No. 30, ¶¶ 69–71.) Jamison also alleges that Defendant Oates acted with deliberate indifference to Jamison's celiac disease during the time that Jamison's was confined at Dillwyn. (*See, e.g.*, ECF No. 30, ¶ 62.)

In the Western District Case, Jamison raised claims that Clarke, Amonette, Oates, and Gregg acted with deliberate indifference to his celiac disease during the time he was confined at Dillwyn. *Jamison*, 2020 WL 5778791, at *3 (summarizing claims). The Court ultimately granted summary judgment to Clarke, Amonette, Oates, and Gregg on these claims.

> First, as to defendants Clarke, Amonette, and Oates, Jamison has failed to allege facts showing that they were personally involved in any violation of his rights. *See supra* note 10. Thus, the claims against them fail for this reason. As to the Dillwyn defendants and Gregg, the court assumes—only for purposes of this opinion—that Jamison has put forth sufficient proof of the objective element. Even so, he cannot establish deliberate indifference on the part of these defendants. Critically, none of those personnel are medical staff: Townes, Morgan, Powell, and Gregg played different roles in food service, and Ratliffe-Walker and Jones were the warden and assistant warden, respectively.
>     . . . .
> Here, it is undisputed that none of these defendants have the authority to prescribe or order special diets based on medical reasons. Put differently, none of them could have overruled Dr. Ohai's decision to withdraw his gluten-free diet order, nor could any of them have ordered a special medical diet be provided to Jamison. Thus, to the extent that they were simply implementing the medical provider's orders, they were entitled to rely on the medical staff and cannot be liable under the Eighth Amendment. For these reasons, summary judgment will be entered in favor of the remaining VDOC defendants as to all claims, except for Amonette, who the court discusses next.

*Id.* at \*11. The Western District then dismissed the individual capacity claims against Defendant Amonette for lack of merit. *Id.* at \*12. The Court retained the official-capacity claims against Defendant Amonette for purposes of granting declaratory or injunctive relief. *Id.* However, the Court later dismissed these official capacity claims. *Jamison*, 2022 WL 326095, at \*12. Portions of Jamison's present claims against Defendants Clarke, Amonette, Gregg, and Oates are redundant of claims that he brought in the Western District and that were dismissed with prejudiced by that Court.

### III. Consequences of Jamison's Failure to Obey the Court's Orders

"Federal Rule of Civil Procedure "41(b) . . . permits a district court to dismiss an action based on a plaintiff's failure to comply with any order." *Nordbrok v. Dep't of Corr.*, 621 F. App'x 227 (4th Cir. 2015) "Moreover, a district court has inherent authority, even in the absence of a defendant's motion, to dismiss an action for a lack of prosecution or failure to comply with court orders and "to manage [its] docket[ ] . . . with a view toward the efficient and expedient resolution of cases." *Gibbs v. SCDC*, No. 20-7510, 2022 WL 1467707, at \*1 (4th Cir. May 10, 2022) (internal citation omitted) (alteration in original) (quoting *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016)). Given the severity of that sanction, the United States Court of Appeals for the Fourth Circuit identified four factors that should guide a court's discretion in dismissing a case pursuant to Fed. R. Civ. P. 41(b): "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019), *as amended* (June 10, 2019) (quoting *Hillig v. C.I.R.*, 916 F.2d 171, 174 (4th Cir. 1990)). "A district court need not engage in a rigid application of this test, however, when[, as here,] a litigant has ignored an

express warning that failure to comply with an order will result in the dismissal of his claim." *Taylor v. Huffman*, No. 95-6380, 1997 WL 407801, at *1 (4th Cir. 1997) (citing *Ballard v. Carlson*, 882 F.2d 93, 95–96 (4th Cir. 1989)).

Furthermore, because Jamison is a prisoner, proceeding *in forma pauperis*, the Court is required to screen his complaints for frivolous or malicious claims. In this regard, the Court has observed that a complaint which "repeats pending or previously litigated claims may be considered abusive" and "malicious." *Wilson v. O'Bryant*, No. 3:22CV691 (DJN), 2023 WL 8188839, at *1 (E.D. Va. Nov. 27, 2023) (emphasis omitted) (citing *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981)). Jamison has a significant history of submitting abusive complaints.

### A.    Jamison Bears Full Responsibility for Ignoring the Court's Orders

Although Jamison is appearing *pro se*, his submissions demonstrate he is a sophisticated litigant. While Jamison's *pro se* status may entitle him "to some deference," it does not relieve him of his duty to abide by the rules and orders of this Court. *Ballard*, 882 F.2d at 96 (citation omitted). Moreover, the Court's orders that Jamison flaunted, regarding not rehashing claims or portions of claims previously dismissed, were not complicated or difficult to obey. Jamison, as the author the Second Particularized Complaint, and as the plaintiff in the prior litigation, could easily have complied with those orders, yet he willfully choose not to do so. Indeed, in his Response to Defendant Ohai's Motion to Drop Ohai as Defendant or Sever Claims, Jamison acknowledges that if he prevails on his appeal of the Western District Case, he would drop Dr. Ohai in the present case because he could simply proceed on the claims dismissed by the Western District in that Court. (ECF No. 73, at 9.) Accordingly, Jamison bears full responsibility for ignoring the Court's orders and falsely certifying that no claim or portion of a

11

claim raised in present litigation has been dismissed with prejudice as part of prior litigation. (ECF No. 29, at 1.)  Furthermore, Jamison's suggestion that all the claims in his Western District Case were "dismissed without prejudice" is simply false.  (ECF No. 30-1, at 2.)  "[I]t is well established that a dismissal is presumed to be with prejudice unless the order explicitly states otherwise."  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981); *Weissinger v. United States*, 423 F.2d 795, 798 n.4 (5th Cir. 1970) (en banc); *Lambert v. Conrad*, 536 F.2d 1183 (7th Cir. 1976)).

### B.    Jamison's Conduct Significantly Prejudiced Defendants and the Court

The Court is familiar with Jamison's style of litigation.  As he did in this case, Jamison prefers to submit a sprawling complaint containing improperly joined claims and defendants. Further, as noted above, the claims of the original Complaint and First Particularized Complaint were redundant and repetitive of claims raised in other litigation.  The Court spent considerable time reviewing Jamison's complaints and crafting orders to ensure that Jamison's Second Particularized Complaint only contained properly joined claims that were not repetitive of claims previously litigated and dismissed.  Such screening was required in light of the fact that Jamison was prisoner proceeding *in forma pauperis*. *See Wilson*, 2023 WL 8188839, at *1 (citing *Crisafi*, 655 F.2d at 1309).  Now, a year and a half into the litigation, the Court and the parties are wasting significant, additional time and resources assessing which claims or portions of claim in the Second Particularized Complaint are redundant of previously dismissed claim.  This process is made all the more cumbersome by Jamison's failure to clearly list his prior claims and his lack of candor as to the disposition of any past claim.

**C.     Jamison's History of Proceeding in a Dilatory Fashion**

Jamison has an expansive history of unnecessarily protracting litigation by improper

complaints and ignoring the Court's directions.  In the case he filed immediately prior to present

action, Jamison filed a complaint that failed to comply with the requirements regarding joinder.

*Jamison v. Northam*, 3:20CV339, ECF No. 15, at 2 (E.D. Va. Dec. 16, 2020).  The Court

observed that:

> Plaintiff's current complaint sprawls over 170 pages, names over 30
> defendants, and contains a variety of claims.  For example, Plaintiff alleges, *inter
> alia*, that Dr. Paul Ohai sexually assaulted him, Mrs. Shaw violated his rights under
> the Americans with Disabilities Act, Defendant Reed interfered with his mail, and
> Dr. Gujral denied him adequate medical care.  The current complaint therefore does
> not comply with the joinder requirements.

*Id.*  The Court directed Jamison to file "an appropriate Particularized Complaint that comports

with the joinder requirements."  *Id.* at 3.  Jamison failed to submit an appropriate Particularized

Complaint that contained all of his claims and directed Jamison to submit a Second

Particularized Complaint.  *Jamison v. Northam*, 3:20CV339, ECF No. 26, at 3–4 (E.D. Va. May

26, 2021).  The Court further admonished Jamison that:

> Federal Rule of Civil Procedure 8(d)(1) further requires that each averment "be
> simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  Even *pro se* plaintiffs must
> recognize Rule 8's vision for "a system of simplified pleadings that give notice of
> the general claim asserted, allow for the preparation of a basic defense, narrow the
> issues to be litigated, and provide a means for quick dispositions of sham claims."
> *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); *see also Peck v. Merletti*, 64
> F. Supp. 2d 599, 602 (E.D. Va. 1999); *Stone v. Warfield*, 184 F.R.D. 553, 555 (D.
> Md. 1999).

*Id.* at 3.  Jamison subsequently retained counsel and eventually voluntarily dismissed *Jamison v.*

*Northam. Jamison v. Northam*, 3:20CV339, ECF No. 34 (E.D. Va. Nov. 1, 2021).

Nevertheless,  when Jamison subsequently filed his original Complaint for the present

action, he ignored the Court's prior instructions regarding the procedures for filing of an

appropriate complaint. Instead, he filed the sprawling, mishmash of a complaint discussed above. Jamison's conduct in the present action alone stands as a testament to his inclination to ignore the Federal Rules of Civil Procedure, the Court's orders, and to proceed in manner of his own choosing. The Court was required to issue multiple orders to Jamison to ensure that he filed a proper complaint that did not contain misjoined or repetitive claims. Even after the Court finally compelled Jamison to file a complaint that only contained properly joined claims, as discussed above, he ignored the directive to exclude from his Second Particularized Complaint any claim or portion of a claim that previously had been dismissed.

After filing the present action, Jamison filed fifteen new actions.[5] *See Jamison v. Clarke*, 3:22CV492 (E.D. Va.); *Jamison v. Kassa*, 3:22CV522 (E.D. Va. ); *Phoenix v. Clarke*, 3:23CV276 (E.D. Va.); *Phoenix v. Clarke*, 3:23CV277 (E.D. Va.); *Phoenix v. Clarke*, No. 3:23CV277 (E.D. Va.); *Jamison v. Clarke*, 3:23CV278 (E.D. Va.); *Jamison v. Haymes*, 3:23CV315 (E.D. Va.); *Jamison v. Clarke*, No. 3:23CV316 (E.D. Va.); *Phoenix v. Clarke*, 3:23CV334 (E.D. Va.); *Phoenix v. Herrick*, No. 3:23CV335 (E.D. Va.); *Jamison v. Robinson*, No. 3:23CV346 (E.D. Va.); *Phoenix v. Clarke*, 3:23CV356 (E.D. Va.); *Phoenix v. Vital Core Health Strategies*, 3:23CV357 (E.D. Va.); *Jamison v. Flemming*, 3:23CV384 (E.D. Va.); *Phoenix v. Clarke*, 3:23CV615 (E.D. Va.). Jamison persisted in filing defective complaints, ignored the Court's directives for correcting his deficiencies, and failed to provide an honest description of his prior litigation. For example, on May 25, 2023, in the case of *Jamison v. Herring*, the Court noted:

> On May 11, 2023, Jamison filed his Particularized Complaint. (ECF No. 15.) Jamison did not follow the Court's detailed instructions. While the Court appreciates that Jamison made efforts to shorten his complaint, he once again provides no real, concise statement of his claims. Instead, it appears that Jamison

---

[5] At some point during the last year, Jamison changed his last name to Phoenix.

provides a statement of his claims several times under various headers making his Particularized Complaint quite repetitive. (*See, e.g.*, ECF No. 15, at 8–11, 11–17, 17–19.)

Next, Jamison's document reflecting his prior litigation is incomplete and does not meaningfully comply with the Court's strict directives. Jamison only listed three cases with any sort of description, and none of these descriptions contain the "the court where the case was filed, a list of the claims raised, the defendants for each claim, and the disposition of each claim." (ECF No. 14, at 1–3.) Jamison also had at least six additional cases pending in this Court that he failed to make any effort to provide information about or even to list in his submission. The directive was to list "all of his prior federal litigation," not just prior closed litigation. (ECF No. 14, at 3.) Jamison has willfully failed to comply with the Court's directives with respect to providing a complete list of his prior litigation. That alone warrants dismissal of his Particularized Complaint. *See* Fed. R. Civ. P. 41(b).

*Jamison v. Herring*, No. 3:22CV360, 2023 WL 3669384, at *3 (E.D. Va. May 25, 2023) (footnote omitted), *aff'd sub nom. Phoenix v. Herring*, No. 23-6549, 2023 WL 5666448 (4th Cir. Sept. 1, 2023). Nevertheless, the Court went on to analyze Jamison's claims in this case and dismiss them as legally frivolous and malicious because Jamison sought to sue opposing counsel from the Western District Case. *Id.* at *5–6 ("Here, having met with no success in suing individual VDOC defendants in his Western District Case, Jamison now seeks to sue the attorneys charged with defending the Commonwealth of Virginia and its employees in that case.").

Provision of an accurate description of his prior litigation is necessary because Jamison often attempts to recycle variants of his prior, dismissed claims. For example, on June 5, 2023, in *Jamison v. Robinson*, the Court observed:

This Complaint is yet another in a series of actions where Jamison sues individuals involved in his now dismissed case in the United States District Court for the Western District of Virginia. *See Jamison v. Amonette*, No. 7:18–cv–00504, 2022 WL 326095, at *1 (W.D. Va. Feb. 3, 2022). In his Complaint, Jamison contends that David Robinson, the Chief of Corrections for the Virginia

Department of Corrections ("VDOC"), Natarcha Gregg, a dietician for the VDOC, and Paul Ohia, a licensed medical practitioner (collectively, "Defendants"), violated his Fourteenth Amendment right to due process. (ECF No. 1, at 2–3.) Specifically, Jamison argues that Defendants provided false testimony in the affidavits that they filed in *Jamison v. Amonette*, No. 7:18–cv–00504 (W.D. Va.) ("Western District Case") and that caused the case to be dismissed. (ECF No. 1, at 3–4). As relief, Jamison asks the Court to, *inter alia*, find Defendants liable for civil perjury, grant him injunctive relief "in the form of outside medical services for his known celiac disease," to investigate certain state attorneys, "to suspend all professional licensing," and to award monetary damages. (ECF No. 1, at 14–15.) As discussed below, Jamison's claims and the action are both frivolous and malicious.

*Jamison v. Robinson*, No. 3:23cv346, 2023 WL 3819370, at *2 (E.D. Va. June 5, 2023)

(footnote omitted).

This abusive, repetitive litigation is neither isolated nor limited to repeating claims from

the Western District Case. On May 9, 2023, in *Jamison v. Kassa*, this Court noted:

As a preliminary matter, the underlying facts on which Jamison's new claims are based are nearly identical to those alleged in a prior case in this Court in which Jamison complained about Dr. Kassa's and Nurse Wurie's alleged lack of treatment for celiac disease among other things. The Court extensively analyzed these claims and the evidence put forth, and, on summary judgment, found that Jamison's claims that Defendants denied him adequate medical care for celiac disease were entirely lacking in merit. *See Jamison v. Kincaid*, No. 1:21–cv–1062 (RDA/IDD), 2022 WL 981938, at *7–8 (E.D. Va. Mar. 30, 2022) (finding Jamison's claims that Nurse Wurie denied him adequate medical care or appropriate diet for celiac disease lacked merit); *Jamison v. Kincaid*, No. 3:19CV19, 2021 WL 4199997, at *16–17 (E.D. Va. Sept. 15, 2021) (finding that Dr. Kassa did not deny Jamison adequate medical care when she failed to obtain pre-incarceration records and provide appropriate treatment for celiac disease).

To the extent that Jamison alleges that Defendants' actions violated his right to adequate medical care for celiac disease, these allegations have been resolved in favor of Defendants and will receive no further consideration here.

*Jamison v. Kassa*, No. 3:22CV552, 2023 WL 3321731, at *2 (E.D. Va. May 9, 2023) (citations

omitted) (footnote omitted).

### D.    The Appropriate Sanction

The Court is "mindful of the fact that dismissal is not a sanction to be invoked lightly." *Ballard*, 882 F.2d at 95 (citing *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978)). Nevertheless, "[w]here a pro se litigant has shown a record of continual disregard for the court and attempted to delay proceedings, dismissal is appropriate." *Vinson v. Scites*, No. 88-7505, 1988 WL 83459 (4th Cir. July 29, 1988) (citing *Hepperle v. Johnston*, 590 F.2d 609, 612–13 (5th Cir. 1979)). Here, the Court explicitly warned Jamison it would dismiss the action if he failed to cull from his complaints any claim or portion of a claim that previously had been dismissed. *See Ballard*, 882 F.2d at 95–96 (holding that court's "explicit warning that a recommendation of dismissal would result from failure to obey his order" was a "critical fact" supporting dismissal). Furthermore, the Fourth Circuit has approved dismissals with prejudice when a plaintiff repeatedly "ignored . . . the district court's express instructions for amending his complaint, [and] instead fil[ed] a series of substantially similar, flawed pleadings." *Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 194 (4th Cir. 2020) (citing *Attkisson*, 925 F.3d at 624; *Stanard v. Nygren*, 658 F.3d 792, 801 (7th Cir. 2011)). The need for a significant sanction is apparent in order to stop Jamison from perpetuating his abusive litigation practices in pending and future litigation. *See Daye v. Bounds*, 509 F.2d 66, 68 (4th Cir. 1975) (cautioning the district courts to be particularly "diligent in acting to prevent state prisoners from calling upon the financial support of the federal government to prosecute frivolous civil suits intended to harass state prison officials.") Jamison must learn to obey the orders of the Court, accept when he has lost a case or claim, and refrain from raising the claim again.

Nevertheless, at this juncture, the Court concludes that the grave sanction of dismissal with prejudice is not the appropriate sanction for Jamison's contumacious and abusive conduct.

Rather, a dismissal of the action without prejudice will be sufficient, provided that should Jamison chose to file a new action challenging the alleged deliberate indifference of prison officials to his celiac disease, he must pay the full filing fee. This financial sanction is hardly onerous considering that Jamison had $2,722.04 in deposits into his prison account between March 27, 2023, and September 27, 2023. *Phoenix v. Clarke*, No. 3:23CV615, ECF No. 4, at 2 (E.D. Va.). Accordingly, as explained above, this action will be DISMISSED WITHOUT PREJUDICE.

## V. Conclusion

Jamison's Second Motion for an Enlargement of Time (ECF No. 90) will be DENIED. The action will be DISMISSED WITHOUT PREJUDICE. The outstanding motions (ECF Nos. 52, 54, 79, 84, 87, 88, 90, 91) will be DENIED AS MOOT.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 1/23/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge